Okay, Mr. Flores. May it please the Court. The District Court's judgment in this charge error case needs to be reversed because these jury instructions... Before you start, Mr. Flores, I see that the brief was signed by Mr. Gunn. I know you're on the brief, but I just need to tell you that I was very surprised that your brief opened by saying that the landlord is extremely wealthy and spends his time between one state and Florida flying on his private jet and is not a Texan. Now the other side, in their footnote, one of their brief points out how irrelevant that is. And so to try to give you the best interpretation I can of that comment in the brief, I thought well, possibly the extreme contention could be made that all Texans know that PVC manufacturing has a chloride byproduct. I can't believe that's really the reason this was stated. I think it was stated to prejudice the Court against the landlord. And that colors your entire brief, and that has no point in a brief unless you can tell me some reasonable basis for why you put that in your brief. Your Honor, we don't assert that as a substantive argument in the case. It was included just as a matter of color to add something to the facts here. We certainly do apologize for any connotation that it has about the other side here. We don't intend it at all, and for that we certainly do apologize, Your Honor. I'm not a Texan. That's right, Your Honor. He wishes he were, but he's not. Yeah, but I've been punished. But that really, you shouldn't have that in your brief. And you can pass that on to Mr. Curry for me as well. We understand, Your Honor, and your point is taken. If I may, we submit that the District Court erred here because these jury instructions hold my client liable for conduct that the underlying contracts at issue do not. To be specific, we'd like the court to conduct its analysis of whether reversible error occurred here in three steps. We think the first step should pertain to the specific instruction at issue and determine whether it's erroneous. We submit that it is because it doesn't account for the ordinary wear and tear. Second, we submit that the court should zoom out and look at the jury charge as a whole and determine whether that instruction was corrected somewhere. And then the third step we see is the harm analysis of whether the error, which wasn't corrected, caused harm in the case. The instruction that was given used the definition from the Texas Property Code, is that right? I think the back half of it does, Your Honor. There's a first half of the sentence we're talking about and the second half of the sentence. The second half of the sentence I think uses part of the property code, but the code doesn't pertain to what we're talking about here. The question is whether liability includes damage that constitutes ordinary wear and tear, and that's controlled by the contracts at issue here, both of the lease provisions. So I know that there was a dispute below about how to define ordinary wear and tear, and I think that's what the property code pertains to. I think that's also what the Bayroid case pertains to. But the error we have here is more fundamental, which is that the instruction you see says that we are in breach if we cause damage to the property, and that's all. There's no provision. Well, this was a very comprehensive instruction. And in the first paragraph of the instruction, it sets out the elements for breach of contract. And element four, he says to recover damages from JM Eagle. Then the element four is damages sustained by Boulder as a result of the breach. Then in paragraph four, the judge says if the tenant causes damage, and damage has been used or damages in paragraph one. Then in paragraph five, he talks about normal wear and tear. And then in paragraph six, he says you've got to keep the property in good order and condition except for ordinary wear and tear. So I really question that this instruction is as confusing as you maintain it is. It's right there in the first six paragraphs. I think I see two issues there, Your Honor. I'll try to address both. One is what gets accounted for in the damages question. And you'll see in the damages interrogatory that the only things that flow into damages are damages caused by a breach. And so then we come back and say, what constitutes a breach? And I see two separate definitions of breach. The first definition is in the very first, what we call laundry list instruction. That's the one we focus on. And we certainly agree that two paragraphs later, you see a different definition of breach. And in fact, it runs directly to the contrary. The plaintiff here will say that this is a case of an ambiguous instruction that requires clarification. But that's not the case. What you have here is a contradiction, an affirmative misstatement that makes us liable in the instruction. Well, isn't it arguable even though the isolated portion of the instruction that you point to, it says damage that the defendant has caused. And so isn't it at least arguable that you only cause damage that doesn't involve ordinary wear and tear? I don't think that's right, Your Honor. I think the causation of damages is in the raw sense of you were on the property and your use of the property caused it. I didn't see this particular issue joined below. I'll be happy to talk about it in detail if we know what the plaintiff's position is. I think the real issue is that we have pure damage to the property and no proviso for ordinary wear and tear. If that were true, if that reading of causation were true, what was true, I don't think you would have the need to provide it below. I think the plaintiff's position is that in the second instance of the instruction, it was proper and indeed necessary to include the proviso for accepting ordinary wear and tear. And their position isn't that- Because that one sentence is ambiguous as to what it means to cause damage, so then the rest of the instruction, the very next paragraph amplifies that and says, well, but it doesn't include ordinary wear and tear. So why doesn't that eliminate any doubt or ambiguity? That's their position, that it's ambiguous. We think it's not ambiguous by the mere plain terms. I think the plaintiff can't make these two instructions coincide without adding in some type of material term that isn't there. In the Appellee's brief, you see this with the general specific dichotomy. They say that our instruction was a general instruction not to be involved when we're challenging, and the lower instruction was a specific instruction to be followed. But I think in this case, the charge is rather clear. If it were the case- The material term you say is being added. The general specific dichotomy that they add, I think that's what you see in the Appellee's brief. If you just read- Because I'm, again, I'm looking at the paragraph in, paragraph six in the prime lease, and I'm looking at paragraph four in the sub-lease, and I never see the word damage used. And that's, I'm looking at thinking, well, maybe that's what the district judge was thinking. He used the word damage in connection with damages, which he had instructed about, you know, in the generic paragraph one. You've got to prove damages sustained by bulger. And then he uses the word damage in paragraph four, and then he talks about what isn't damage in paragraphs five and six about normal wear and tear. Your Honor, I think the word damage in the instruction we're looking at is used in the ordinary sense. I think that's what the evidence at trial construed it, and I- Did y'all make a specific objection to that? To the instruction at issue, we did, Your Honor. To the use of the word damage? No, no, we didn't specify the word damage, because I don't think the plaintiff had posited the instruction to mean that. Maybe we can clarify today, but this is- Wait, the judge is giving the instruction. He's giving you the instruction he's going to give, and then you object to it. That's right, Your Honor. I just didn't see that, I don't recall your saying, well, Your Honor, the word damage is misleading. We don't think the word damage is misleading, Your Honor. We think damage means it's ordinary sense of any physical alteration to the property. Our objection is that this didn't account for the ordinary wear and tear proviso. We've pointed you to the two objections- Do you concede that the actual question the jury asked was accurate? It says, interrogatory number one, do you find that Bolger has proven by a preponderance that J.M. Eagle failed to comply with one or more provisions of the 76 prime lease or the 1990 sub lease? And both those leases have the ordinary wear and tear language. So, do you acknowledge that the question itself, and I'm asking about this because it goes to whether there's any harm, even if you're right, is that question accurate? The question is accurate, but the problem is that it's fed by the laundry list of breach definitions. And so, there's no problem with the laundry list format per se, so long as each item in the list is correctly defined and doesn't have a false positive. I think when the jury looks at the interrogatory and says, did a breach occur? They'll flip back to the instruction and see the very first instruction that says, the breach occurs if you have damage to the property. Won't the question also cause them to flip to the provisions of the leases which have that ordinary wear and tear language? I think that they will, your honor, but this would override them, right? The instructions say in the very beginning that the jury is supposed to apply the law as I give it to you. And so, I don't think we want juries questioning what the face of a jury charge says because of what one of the pieces of evidence says. There's a line in the court's cases that distinguishes between cases of ambiguity and cases of conflict. I think this is a conflict case. If the court views this as merely ambiguity, I'm sorry, between cases of ambiguity, an ambiguous instruction, and a conflicting instruction, an affirmative misstatement. If the court views this as a mere ambiguity in the instruction we're challenging, then I think it would be proper to read the charge as a whole and use the later instructions to clarify it. But our position is that this isn't an ambiguity, that the erroneous instruction is in fact clear. And that puts us in the line of cases about affirmative misstatements and contradiction. The two- That invalidated a jury verdict in a civil case based on the instruction is the EEOC versus Manville-Sales, it's from 1994. Did you find any more recent case of ours that found a civil jury instruction required overturning a verdict? I don't have a better case that's more recent, although there may be recent cases. We chose Manville because it did exactly what we'd like the court to do here. The court there, as you say, Judge Costa, ruled that it was a reversible error. And before it did so, it distinguished the cases about ambiguity and clarification. And it said that reversible error had occurred there because there were two instructions and one of them, quote, simply stands in contradiction to a misstatement of the law. And I think that's precisely what we have here. So that- If that is the most recent case, and it's the most recent one you cited, that would mean your argument is that this is the most problematic jury instruction we've seen in two decades? In this respect, Your Honor, these are rare cases. I think Judge Gee's opinion says that they are rare, but there is a line of cases. We don't hide from that. It's a good thing. I think district courts virtually always are able to resolve these kinds of errors. And to be clear, we don't think this was an intentional error on the district court's part. What we think here is this is a fault of sort of missing the forest for the trees. There was a big dispute in this case about how to define ordinary wear and tear. But there was, of course, also this more fundamental dispute of making sure that each instruction accounts for it in the first place. And that's what we objected to at both of the places we've given you in the record. I mean, the other thing I want to point out here is that I don't want it to be an elephant in the room that this is a technicality or a gotcha appeal. Because remember, in each case in which there are conflicting instructions like this, the plaintiff will be making the same argument that the plaintiff makes here, that worry not, the jury knew which one to follow. And in each case, there's going to be this odd sense that it's weird for a district judge to have gotten it right and wrong at the same time. But that's precisely the conundrum that Judge Gee resolved in the Arrow opinion, which we think is on all fours here. Because you have two statements of what define the party's obligations, and they run directly into each other. The jury may have applied the right standard, maybe they didn't, but we just don't know on appellate review. And so that's what drives the opinion here. We agree that these cases are rare, but I think the court could decide this case by taking the charge. And Manville, which is our best case, and Arrow back and decide it on those grounds. The last thing I want to say is that I anticipate the plaintiff to argue a lot about what the evidence in the case showed. I think they'll say that because this issue was very prominent at trial, the issue of whether harm was just up to ordinary wear and tear or exceeded ordinary wear and tear. They'll say that because that was prominent, that there is no harm. But we think that's precisely backward, because this was the central dispute in the case. It was critical for the judge to charge it correctly. And the other thing I anticipate the plaintiff may say is that because they introduced proof that was sufficient to carry their burden under a proper charge, that there's no harm here either. But that again is answered by Arrow. We don't have to win a sufficiency appeal underneath our charge, Arrow appealed here. We just need to show you that this was a hotly contested issue, and I think very much it was in this case. Well then, that's an interesting point, because the second prong of looking at a jury instruction to which a proper objection was made is, is the error harmful? And you look at that from the substantial, substantially what took place at trial. And so where does that end and your argument that you don't look at it begin? Well, I think the harm here is clear precisely for what Arrow said, is that we had evidence on both sides, and half of the evidence said that the damage here exceeded ordinary wear and tear. That was the plaintiff's evidence. But the point was made consistently throughout. It had to be greater than normal wear and tear. You made that point as well at trial, didn't you? We did, Your Honor. So there's no inconsistency there. The jury had hammered into its heads, you've got to have damage above normal wear and tear. And then, Your Honor, the court told them otherwise, and that's precisely the error. I see that my time has expired. Thank you. You've saved time for a brother, Mr. Flores. Mr. Extreme? Good morning, Your Honors. May it please this Honorable Court, it is a privilege to be, I think, the first lawyer in my 108-year-old firm to appear in this esteemed court. Your Honors. Oh, you're not a Texan either. I come from a great distance, Your Honor, and no, I am not a Texan. I think we share that. Well, there's a close connection, though. A lot of Texans went to California. That's true, Your Honor. There are. Your Honor, I want to start out with the Arrow case, where I think counsel ended, and just read a quote from it, because I think it really sums up what is happening here. The case says that appellant was entitled to have the critical issues bearing upon its liability submitted and answered by the jury upon a clear and proper charge. That is not to say, however, that post-verdict linguistic analysis by imaginatory counsel will frequently be rewarded with a second bite at the apple. I believe that that is what we have here. I believe that we have a contrived contradiction in one phrase of a seven-paragraph jury instruction being looked at in a vacuum. And this is something that Judge Gray Miller took a lot of time. Four different times we looked at this. I happen to have been trial counsel before Judge Miller. And I believe, as you said, Judge Barksdale, that there is a serious question here as to whether or not there was an actual objection to this particular paragraph. And I don't believe, even when we look at the record, and I recall that there was no such objection. And therefore, I believe that we really are talking about a plain air standard, rather than an abuse of discretion. Either way, it's a difficult proposition to do what plaintiff wishes, or what the appellant wishes to do here. Judge Miller really gave a very balanced, fair, and thoughtful discussion about these jury charges. And as an example of that, when the appellant did ask that the term ordinary wear and tear be put in the paragraph six at the appropriate places, Judge Miller looked and said, sure, let's do that. I think we can do that. What did not happen, however, is that the appellant never looked at paragraph four and said, you know, this is a standalone liability trigger. And what we ought to do is we ought to put ordinary wear and tear there. So Judge Gray-Miller never got a chance to respond to that. But I suspect I know what would have happened, and I think Judge Costa really said it best. And I think Judge Barksdale, you hit on it too. When you look at the leases, both the 1976 lease and the 1990 sub-lease, the fact is there is no requirement for ordinary wear and tear to repair it. It's the old doctrine of you wrecked it, you fix it. And the fact of the matter is, as Judge Costa pointed out, that particular jury instruction says if the plaintiff, I'm sorry, it says if the tenant causes damage to the property, a tenant is in breach of the contractual duty to maintain property in good condition and repair if the tenant causes damage to the property. We're not talking about time. We're not talking about age. We're not talking about elements. We're talking about the tenant causing damages. And that's the Barroyd case. In order to get this instruction, I handed Judge Miller the Barroyd case. And I said, this is what happened in Barroyd. Barroyd had a floor. And specifically, he said, you can rent this mud company, but you're a mud company. I don't know what you're doing with the mud, but you better make sure that the floor is maintained. And the Barroyd court said, this really isn't a question of wear and tear when the tenant causes damage to the property. And that's what happened here. So number one, I don't think that the appellant met its Rule 51 duty to object properly. Number two, as we look at the standard, the first thing we look at, and this is your case, and I hope I'm pronouncing it correctly, the Tata Chemical Company case versus Westlake System, very, very carefully, and I think in great detail, sets out the three-part test. And the first part is that the appellant must show the viewing, the charge as a whole, not in a vacuum, not one phrase. And by the way, when you read the brief, it seems like this is a standalone instruction. And then you pull the jury instruction, and you see it is an absolute unfolding of general to specific. And it starts out with general, what breach of contract is, and then it goes down. So the first thing that they must show is that the charge creates a substantial and irrevocable doubt whether the jury has been properly guided in its deliberations. In other words, the law is wrong. And the fact of the matter is, we only have to look at the leases to find the law. And the leases say, leasing will keep the property in good order and condition except ordinary wear and tear. And we had that later on in the instruction. We even defined wear and tear in paragraph five. In paragraph six, we talk about except wear and tear. But let's look at the next part, the repair part. If you break it, if you wreck it, and we'll make all structural and non-structural, ordinary and extraordinary, foreseen and unforeseen repairs, replacements and renewals, and shall take such other actions as may be necessary or appropriate to keep and maintain the property in good order and condition and to keep any sellers or manufacturers' warranties or undertakings in effect. No mention about reasonable wear and tear. Why? That's because the tenant, it's their duty to repair. So we look at two different obligations here. You give back the property, if it has holes, pinholes in the wall, if it has stained carpet, if it has a thin layer of rust because it's a metal building, that's part of ordinary wear and tear. Let me ask this, I don't know if this goes directly to the jury instruction question we're considering, but I was wondering about this in reading the briefs, and I did see some mention of it apparently in the trial record, but in determining ordinary wear and tear, do you consider the use to which the property is being put? It is a factor. So it's ordinary wear and tear in the context of a PVC pipe manufacturer that's going to have more damage than some more... And you know, Your Honour, that's exactly what we did. Here's what we did in this case. To answer your question directly, Jam Eagle has two plants. One it rents from us, OK? The other one it owns. So in order to establish what reasonable or ordinary wear and tear it was, we called the owner of that plant, and he was proud. He was proud of that. And he said, now, do you have holes in your wall? No. Do you have holes in your beads? No. Do you have holes in your girts? No. Do you have rust? Yes, we have rust. So we understood from his testimony, his name was Dan Wimberly, and he was the head of the Wharton plant, closer to the Gulf, I understand, than Conroe, but within the same Houston area. So they made the same things. The plant was the same age, but they were different. And that's how we illustrated, in part, what you're talking about, Judge. So we go on to the next one. We haven't misstated the law. And Berowood is an example of that, but the lease is what we look to on that. No ordinary wear and tear in the repair portion. Now, I think that, Judge Barksdale, you hit on the point of even if erroneous, the appellate court will not reverse if the error could not have affected the outcome of the case. I was at trial every day. In this case, indeed, was about ordinary wear and tear. The jury was bored, but they were not confused. It was a case about corrosion, and you can imagine trying to keep nine jurors' attention talking about corrosion every day. But every day, starting with opening statement, we'd get up and say, this case is about ordinary wear and tear. Does it exceed ordinary wear and tear, or is it not? And, you know, in the opening statement, we had, I had, pictures of the lease, blowups, saying this is what we have to show. It's got to be in good condition except ordinary wear and tear. And did JM, in closing argument, make an argument regarding wear and tear? Over and over again. Thirteen out of 19 witnesses testified on what was ordinary wear and tear. I'm talking about in closing argument to the jury. Oh, yes. The closing argument was, indeed, their defense was this whole thing was ordinary wear and tear, the holes in the beam. We, what we did is we cut out columns, and we cut out beams, and we built a stand before the jury, and we showed the holes in that. And they argued this was ordinary wear and tear, and we argued this was something that exceeded that. But over 100 times in the trial, the phrase ordinary wear and tear or reasonable wear and tear was mentioned. In fact, even if this case, even if you were to decide that this phrase that they're complaining about is inaccurate, the Delancey case says, even if it's inaccurate, if you, if read as a whole, in light of what happened at trial, you still should leave the jury verdict intact if you believe that the jury was not confused. So it is clear, if you were at trial, or if you read carefully in the record, that this is a matter that was mentioned by me 13 times in opening statement as something that we had to show, that this was different. One of the things that I said is one of their defenses is this is going to be ordinary wear and tear. The jury interrogatory number one ask, as Judge Costa has pointed out, do you find Bolger as proven by proponents of the evidence that J.M. Eagle failed to comply with one or more provisions in the 1976 prime lease or the 1990 sub-lease? You know, we get some confusing precedent sometimes about what is the effect of an interrogatory of the jury? Can it be used to cure a defective instruction? What's your take on that? Well, first of all, we, you know, respectfully I understand the question, but we don't believe that it was defective. However, your question assumes that it was, and the answer is yes. I think that the Delancey case says very clearly, even in an accurate statement. If you read as a whole, and I can get. No, I'm talking about the jury interrogatory. Interrogatory number one. How can that be used? Assuming, arguendo, the instruction was defective, how can jury interrogatory number one, which tells the jury, go look at these sub-leases and lease and sub-lease, which I assume they had in the jury room with them, they were evidence. Absolutely. How can that be used to cure the jury instruction? Because it refers back to the lease, Your Honor, and the lease was absolutely clear as to what was required. So your argument would be that we can look at the jury interrogatory in deciding whether there was, whether a defective jury instruction had an effect on the jury, on the verdict. I think that the jury interrogatory is the most important thing. It is a standalone liability trigger. Unlike one phrase in one of the introductory paragraphs, it is a standalone liability trigger, and it was in Manville. Manville was a case, this court, one of the cases before this court, and the Manville case had a lot of law in it, but it came down to one particular interrogatory that was wrong. And even though the law was correct, it was a standalone liability trigger. So that, I think, is the point here. Do you- Any objection by the defendant to this, the wording of this jury interrogatory, interrogatory number one? No, in fact, just the opposite. Early on, we started out with something much more complicated, and Judge Miller, who has obviously much more experience at these case, complex cases, than perhaps either counsel, said this is too complex, let's make it simple. Very simple. Do you find that Bulger has proven, by a preponderance of the evidence, that J.M. Eagle failed to comply with Morneau or the provisions of 1976 primaries, or the 1990 sub-lease? Well, Your Honor, shouldn't we put all of the provisions in the lease in there? Absolutely not. We've gone over that ad nauseum. They're gonna have them in the jury room. Did they breach the lease or not? So I think that's exactly what it does. It cures that, because it directs the jury to go back to the lease. Finally, the last element. They, the last element in this test, is that the appellant must show it offered a proposed instruction to the district court that correctly stated the law. Now, if you look at their instruction, their instruction does not correctly state the law. Well, I'm not sure about, again, all of this has some different precedent. I think when you're saying you have to present it as an instruction to the judge that correctly stated the law, I think that has to be when he refused your instruction. Other words, he should have given this instruction. Well, first you gotta prove it was a correct statement of the law. I'm not so sure that when you say to the judge, Your Honor, this instruction you've got is wrong for the following reasons. I'm not sure you have to give him one that is your version of it. Do you see the distinction I'm making? I do see the distinction, Your Honor. I think that. Because both of you presented proposed instructions to the court, and then he came up with this version. He did, and I think it's different than both of our versions. Right, but I don't think, that being the case, I don't think the defendant was required to then say, Judge, your instruction that you've written after looking at our proposed instructions is wrong. Here, let me give you the correct statement of the law. I think that's only when you present an instruction to the judge and he refuses it, and you raise that as a point of error on appeal. I understand your point, Your Honor. I don't necessarily read the cases that way. The way I read the cases is that if you don't offer the judge an alternative that has the correct law, and in fact, there was comments about the diversity of the circuits in which this multifaceted, I think, six-pronged test in establishing what ordinary or interior was, was perhaps too diverse for a case based on Texas law. Without offering something, my reading of it, and I respectfully is that there is stop from saying, Judge, you made a mistake, and you should have used the correct law. All the judge had was his version, was my version, and then a version which didn't state the correct law. So it's an issue of, I think, it's an issue of, again, not giving the court an opportunity to make the right call, and I think it almost fits in with the failure to preserve the error. In any event, I'm ahead of time, and I know that doesn't offend the court when that happens. Does the court have any questions for me that remain unanswered? If we did, we would let you know. Thank you, Mr. String. Thank you, Your Honor. Mr. Flores, you've saved time for rebuttal. I have three points to make. The first is about the preservation question we just heard about. Judge Barksdale, we agree with you that since we weren't insisting in asking for a question, we probably didn't need to provide a correct one, but we did. It's on page 2600 of the record, and we've cited that for you in our brief as well. That's where we say that to prove defendant breached the lease, plaintiff must first prove by a preponderance of the evidence that defendant returned the factory in a condition that exceeds ordinary wear and tear. The second thing I have to say. Let me ask you, the judge in his acceptance of your two proposed instructions, et cetera, did he write granted or refused on each proposed instruction, and is it in the record, or did he just take your two and come up with his own charge? I don't think we have paper records of those rulings, Your Honor. You can see it in the transcript, which isn't all that long, that feeds into the next point I have. You heard my friend on the other side say that the Bayroid case is what warrants the instruction we're talking about, and if you'll look at our second objection, it's at record page 5602. This is where our trial attorney says, he's pointing to the instruction on page nine, the paragraph that states, and he reads this instruction, and our objection is, Your Honor, we would object to the instruction, number one, giving the inclusion of this particular paragraph. I believe that the plaintiff relies on the Bayroid case to support that particular statement in the instruction, and we would argue, Your Honor, that the Bayroid case does not stand for that particular proposition. So the very same debate that's happening now, and the argument they're using to justify this instruction is what we objected to below. The last thing I have to say is about the issue of whether an interrogatory relates to instructions, and Arrow addresses this, Your Honor. I think the proposition it stands for is that from a jury's perspective, the interrogatory and the instructions are of equal dignity, and that's why conflict between them causes harm. If the court has no further questions, we'll submit. Thank you, Mr. Flores. Your case is under submission, and the court will take a brief recess.